**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **HERBERT BAUMGARTEN,** | * |
| Plaintiff, | * |
| v. | *    Case No.: GJH-19-374 |
| | * |
| **SHERREE BELSKY,** | |
| | * |
| Defendant. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Herbert Baumgarten brought this defamation action against Defendant Sherree Belsky based on statements Defendant published about Plaintiff to a Facebook group. ECF No. 1-2. Pending before the Court is Defendant's Motion to Dismiss. ECF No. 18. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion to Dismiss is granted.

**I.    BACKGROUND**[1]

Plaintiff is a resident of Baltimore City, Maryland. ECF No. 1-2 ¶ 2. Until September 12, 2017, he was married to Deborah Baumgarten, with whom he shares a minor child. *Id.* ¶¶ 5, 6. On September 12, 2017, the Baltimore City Circuit Court issued a Judgment of Absolute Divorce (the "Divorce Judgment") for Plaintiff and Ms. Baumgarten, but because Plaintiff and Ms. Baumgarten are Orthodox Jews, Ms. Baumgarten was also required to obtain from Plaintiff a Jewish divorce document known as a "*get*" in order for her to remarry in accordance with

---

[1] Unless otherwise stated, the Court relies on the facts asserted in the Complaint, ECF No. 1-2, and presumes they are true.

1

Orthodox Jewish religious practice. *Id.* ¶¶ 8, 9, 10. Plaintiff gave Ms. Baumgarten a *get* on September 18, 2018. *Id.* ¶ 12.

Defendant, who resides in Nassau County, New York, is a long-time friend and neighbor of Ms. Baumgarten. *Id.* ¶ 11. In 2018, Defendant published several false statements regarding Plaintiff in a Facebook group that is regularly visited by approximately 28,000 Jewish women (the "Facebook Group"). *Id.* ¶ 13. On January 14, 2018, Defendant published to the Facebook Group the statement that Plaintiff had insisted prior to his marriage that Ms. Baumgarten sign an Arbitration Agreement from the Bais Din of America (the "Arbitration Agreement") and that thereafter Plaintiff failed to abide by the terms of that Arbitration Agreement. *Id.* That same day, Defendant also published the statement that under the terms of the Divorce Judgment, Plaintiff was required to pay half of the minor child's tuition, but that he had failed to do so in violation of his obligations under the Divorce Judgment. *Id.* On February 19, 2018, Defendant published to the Facebook Group the statement that Plaintiff was "trying to dig up dirt against [Defendant's] family to use against [Defendant]." *Id.* That same day, she again published the statement that Plaintiff had insisted that Ms. Baumgarten sign the Arbitration Agreement prior to their marriage. *Id.* Finally, on September 18, 2018, the same day that Plaintiff gave Ms. Baumgarten her *get*, Defendant published to the Facebook Group the statement that "[Plaintiff's giving of the *get*] was not out of the goodness of his heart, he demanded a huge monetary fee in return." *Id.* ¶ 14. Each of these statements was false. *Id*. ¶¶ 13–14. The publication of these statements has negatively affected Plaintiff's reputation, character, and goodwill in the Jewish community in Baltimore, Maryland, and it has caused and is likely to continue to cause Plaintiff to be subjected to ridicule, contempt, and disgrace. *Id.* ¶ 18.

On October 10, 2018, Plaintiff filed a Complaint in the Circuit Court for Baltimore City, Maryland alleging defamation against Defendant. ECF No. 1-2. On January 8, 2019, Defendant filed a Motion to Dismiss in the state court. ECF No. 1-8. Plaintiff filed a response on January 21, 2019, ECF No. 7-1, and Defendant filed a reply on February 5, 2019, ECF No. 1-10. On February 7, 2019, Defendant removed the case to this Court. ECF No. 1. On March 11, 2019, Plaintiff filed a Motion to Remand, ECF No. 8, which the Court denied on October 15, 2019. ECF No. 16. On October 25, 2019, Defendant renewed the Motion to Dismiss she had filed in the state court, incorporating both the Motion and the reply brief in support of the Motion. ECF No. 18. On November 3, 2019, Plaintiff filed a response and incorporated the response brief he had filed in the state court. ECF No. 19.

## II.   DISCUSSION

Defendant moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). A challenge to personal jurisdiction is to be resolved by "the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted). Discovery and an evidentiary hearing are not required to resolve a Rule 12(b)(2) motion. *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351, at 274–313 (3d ed. 2004, 2012 Supp.). Rather, the Court may, in its discretion, address personal jurisdiction as a preliminary matter, ruling solely on the motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). In such a circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers*

*Corp.*, 561 F.3d at 276. "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993)).

Personal jurisdiction over a nonresident defendant is proper when "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *see also* Fed. R. Civ. P. 4(k)(1)(A). "In applying Maryland's long-arm statute, federal courts often state that '[the] statutory inquiry merges with [the] constitutional inquiry.'" *Dring v. Sullivan*, 423 F. Supp. 2d 540, 544 (D. Md. 2006) (collecting cases). Plaintiff's Complaint fails to sufficiently allege facts that would establish jurisdiction under Maryland's long-arm statute, "so the Court need not wade into the due process limits on personal jurisdiction." *Winter v. Pinkins*, No. JKB-14-2125, 2014 WL 5500393, at *4 (D. Md. Oct. 14, 2014).

The Complaint asserts personal jurisdiction under § 6-103(b)(3) of Maryland's long-arm statute. Section 6-103(b)(3) authorizes jurisdiction when a person "[c]auses tortious injury in the State by an act or omission in the State." MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(3). "Courts have held that this subsection requires that both the tortious injury *and* the tortious act must have occurred in Maryland." *Dring*, 423 F. Supp. 2d at 546 (collecting cases) (emphasis added); *see also Zinz v. Evans & Mitchell Indus.*, 22 Md. App. 126, 130 (Md. Ct. Spec. App. 1974) ("The causal act is separated from the resulting injury. Both elements must be present before personal jurisdiction will be inferred.").

Here, although the Complaint does allege that Defendant's false statements in the Facebook Group caused Plaintiff tortious injury in Maryland, it does not allege that Defendant's

4

allegedly tortious acts occurred in Maryland. "Harmful speech *occurs* in the state where the speech originates." *Winter*, 2014 WL 5500393, at *3 (citing *Dring*, 423 F. Supp. 2d at 542–44 and *Zinz*, 22 Md. App. at 130–32) (emphasis in original). In *Winter v. Pinkins*, Judge Bredar determined that this Court lacked personal jurisdiction under § 6-103(b)(3) over a defendant who had attacked the plaintiff's character through web activity on her personal blog, Facebook, Twitter, and two other websites because the Complaint contained no allegations that the defendant's "harmful speech originated in Maryland," and the Court "ha[d] no basis to suspect [] that Defendant traveled into Maryland before posting the allegedly harmful speech." 2014 WL 5500393, at *1, *3.

Similarly, here, although the Complaint does allege that the Facebook Group includes women in Baltimore, Maryland, *see* ECF No. 1-2 ¶ 13, it contains no allegation that Defendant's "harmful speech originated in Maryland," *see Winter*, 2014 WL 5500393, at *3. In fact, the Complaint alleges that Defendant is a resident of New York, and it contains no allegations from which the Court could infer "that Defendant traveled into Maryland before posting the allegedly harmful speech" in the Facebook Group. *See id.* Thus, the Court concludes that it does not have personal jurisdiction over Defendant under § 6-103(b)(3), where the alleged tortious activity occurred outside of Maryland. *See Winter*, 2014 WL 5500393, at *3; *see also Pandit v. Pandit*, No. PX-18-1136, 2018 WL 5026373, at *2 (D. Md. Oct. 17, 2018), *aff'd*, No. 19-1045, 2020 WL 1815725 (4th Cir. Oct. 17, 2018) (finding that the tortious act of defamation did not occur in Maryland where the alleged defamatory letters and emails were sent from Arkansas); *Dring*, 424 F. Supp. 2d at 546 (dismissing defamation claim for lack of personal jurisdiction where complaint alleged that a Maryland resident was harmed by an email sent by a defendant who "sat at a computer in New Jersey"); *Zinz*, 22 Md. App. at 132–33 (holding that Maryland's long-arm

statute did not authorize personal jurisdiction over a nonresident defendant who mailed copies of an allegedly defamatory letter from Georgia to Maryland residents).

In his response to the Motion to Dismiss, Plaintiff also contends that § 6-103(b)(4) of Maryland's long-arm statute provides a basis for this Court to exercise personal jurisdiction. Section 6-103(b)(4) authorizes personal jurisdiction over a person who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, foods, services, or manufactured products used or consumed in the State." MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(4). "[I]solated and sporadic association with th[e] forum does not amount to a persistent course of conduct." *Pandit*, 2018 WL 5026373, at *3 (citing *Estate of Morris v. Goodwin*, No. DKC-13-3383, 2015 WL 132617, at *5 (D. Md. Jan. 8, 2015)) (finding that § 6-103(b)(4) did not confer jurisdiction over nonresident defendants who infrequently and sporadically visited and sent letters to Maryland because this activity did not amount to a persistent course of conduct).

Here, the only allegations regarding Defendant's contacts with Maryland are that she made five posts about a Maryland resident in a Facebook Group over a nine-month period and that those posts may have been read by people within Maryland. *See* ECF No. 1-2 ¶¶ 13, 14. These communications are "isolated" and "sporadic," and therefore do not amount to a persistent course of conduct in Maryland that would confer jurisdiction under § 6-103(b)(4). *See Pandit*, 2018 WL 5026373, at *3. Although Plaintiff contends that the Court "may not dismiss the Complaint without giving [him] an opportunity to engage in discovery" regarding Defendant's activities in Maryland, *see* ECF No. 7-1 at 4,[2] "[w]hen a plaintiff offers only speculation or

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Md., Inc.*, 334 F.3d at 402; *see also Pandit*, 2018 WL 5026373, at *4 (denying jurisdictional discovery where plaintiff had given the court "no reason to believe that discovery would unearth facts sufficient to confer personal jurisdiction over any of the Defendants"). Plaintiff has provided the Court with nothing beyond mere speculation that would suggest Defendant engages in a regular, persistent, or substantial course of conduct in Maryland, so the Court will deny jurisdictional discovery. Because Plaintiff has failed to demonstrate that Maryland's long-arm statute confers jurisdiction over Defendant, the Complaint is dismissed.[3]

## III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted. A separate Order shall issue.

Date: June     24, 2020         /s/
                                GEORGE J. HAZEL
                                United States District Judge

---

[3] Defendant has also moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the Court has determined that it lacks personal jurisdiction over Defendant, it need not address whether the Complaint actually states a claim for defamation.